**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NATIONAL FIRE & MARINE**
**INSURANCE COMPANY,**

    **Plaintiff,**

v.                                                     Case No.  8:04-cv-1286-T-TBM

**Adoreable PROMOTIONS, INC.;**
**ARTHUR P. DORE; AMERICAN**
**BOXING & ATHLETIC ASSOCIATION,**
**INC.; RAYMOND BLACKBURN; THE**
**SARASOTA COUNTY AGRICULTURAL**
**FAIR ASSOCIATION, INC.; ROBERT**
**CHARLES YOUNG, as Personal**
**Representative for the Estate of Stacy**
**Young; TONY L. ROTEN; KELLY ROTEN,**

    **Defendants.**
_____/

**O R D E R**

THIS MATTER is before the court on **Adoreable Promotions, Inc., American Boxing & Athletic Assoc., and Arthur P. Dore's Motion for Summary Judgment** (Doc. 42),[1] as supplemented (Doc. 59), and Plaintiff National Fire & Marine Insurance Co.'s (hereinafter "Plaintiff" or "National Fire") response in opposition (Doc. 48) and the **Cross-Motion of National Fire & Marine Insurance Company for Summary Judgment** (Doc. 49) and the response of Defendants Adoreable Pomotions, Inc., American Boxing & Athletic

---

[1]Although the American Boxing & Athletic Association (hereinafter "ABAA") is named in these pleadings as one of the Adoreable Defendants, these Defendants indicate that factual question exist as to whether ABAA is an insured under the policy in question, and thus, ABAA is not seeking summary judgment that it is entitled to liability coverage.

Association, and Arthur P. Dore (hereinafter, collectively, the "Adorable Defendants") (Doc. 50). The Sarasota County Agricultural Fair Association, Inc. (hereinafter "SCAFA"), adopts and joins in the response of the Adoreable Defendants. See (Doc. 51). In support of their relative positions, the parties filed affidavits, depositions, and other exhibits. See (Docs. 42-1 to 42-4, 46, 47, 53). Defendants Raymond Blackburn; Robert Charles Young, as personal representative for the Estate of Stacy Young; and Tony L. Roten and Kelly Roten (hereinafter, collectively, the "Young/Roten Defendants") filed no dispositive motion(s) of their own or any response(s) to Plaintiff's motion for summary judgment. Oral arguments on the motions were heard on July 13, 2006.

I.

The undisputed facts establish that Defendant Adoreable Promotions, Inc. (hereinafter "Adoreable") is a Michigan corporation that promotes and operates, among other events, amateur boxing contests around the country known as the Toughman Contest. Defendant ABAA is a Michigan not-for-profit corporation that promotes amateur boxing and owns a gym for amateur boxers in Bay City, Michigan. To raise proceeds, it sanctions certain Toughman Contests, including the one at issue in this case. For those events, it hires Adoreable to promote and operate the event. Defendant Arthur P. Dore, a resident of Michigan, originally coined the phrase and promoted Toughman Contests through two corporate entities. The assets of the last such corporation were sold to Adoreable in or about 1996. During the event at issue, Mr. Dore claims to have been the "volunteer" ringmaster. National Fire issued a policy of commercial general liability insurance, Policy No. 72FL155659 (hereinafter "the policy") to Adoreable covering the

period of June 1, 2003, to June 1, 2004.  The policy named SCAFA an additional insured under the policy.

On June 13 and 14, 2003, a Toughman Contest was held in Sarasota, Florida, at the Robarts Arena, which is maintained by Defendant SCAFA.  Defendant Raymond Black, a resident of the state of Florida, served as the referee of this Toughman Contest.  At this Toughman Contest, in separate contests, Stacy Young and Tony Roten were injured while participating in fights.  Stacy Young died as a consequence of her injuries.  Tony Roten claims severe and permanent injuries.

Defendants Tony Roten and his wife, Kelly Roten, sued the Adoreable Defendants, Mr. Blackburn, and the SCAFA in state court (hereinafter the "Roten litigation").  By this litigation, the Rotens seek damages for losses sustained as a result of the alleged negligence by the Adoreable Defendants and Mr. Blackburn, and the premises liability of SCAFA.  Ms. Roten seeks damages for loss of consortium as well.  The Rotens allege, *inter alia*, that the Adoreable Defendants fraudulently induced Tony Roten to participate in the Toughman Contest by leading him to believe that adequate safety measures would be in place and failed to provide adequate supervision of the participants and a qualified ringside doctor.

Defendant Robert Charles Young, as Personal Representative for the Estate of Stacy Young, filed a wrongful death action against the Adoreable Defendants, Mr. Blackburn, and the SCAFA in state court (hereinafter "Young litigation"), seeking damages for losses sustained as a result of the alleged negligence of the Adoreable Defendants and Mr. Blackburn, and the premises liability of SCAFA.  Mr. Young alleges, *inter alia*, that the Adoreable Defendants fraudulently induced Stacy Young to participate in the Toughman Contest by leading her to

believe that adequate safety measures would be in place and failed to provide adequate supervision of the participants and a qualified ringside doctor.

The Adoreable Defendants have made a demand upon National Fire for liability insurance coverage and indemnity for any damages assessed against them in the Roten litigation and/or Young litigation. National Fire is defending Adoreable and ABAA in these state court actions under a reservation of rights. National Fire has denied Mr. Dore's and the SCAFA's claims for coverage under the policy. Mr. Dore is represented in the state court action by his homeowner's insurance carrier, Frankenmuth Mutual.

National Fire filed the instant action seeking declaratory relief and a finding that the policy in question does not afford liability coverage for the Adoreable Defendants, Mr. Blackburn, and the SCAFA for any of the incidents that are the subject of the Roten and Young litigations because the incidents do not trigger liability coverage or are otherwise excepted from liability coverage; and that National Fire is not liable to pay any judgment entered in favor of the Young/Roten Defendants in their underlying state court actions. The Adoreable Defendants and the Plaintiff filed the instant cross-motions for summary judgment (Docs. 42, 49) and their responses in opposition (Docs. 48, 50, respectively).

## II.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining

whether summary judgment is appropriate. Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. Celotex, 477 U.S. at 324; Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994). The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception. Perkins v. School Bd. of Pinellas County, 902 F. Supp. 1503 (M.D. Fla. 1995). It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." Hairston, 9 F.3d at 919 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. Hairston, 9 F.3d at 921; see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

III.

A.

As a threshold matter, the court must determine which state's laws governs this action. Neither party briefed the issue thoroughly. National Fire has taken no position, either in its pleadings or in oral argument, as to the applicable law. The Adoreable Defendants only argue in passing that Michigan law should apply, but they also note that there is no substantive difference between the laws of Florida and Michigan with respect to the issues raised by their motion. At any rate, the parties cite to the laws of both states and of other jurisdictions. While choice of law questions can be avoided if the laws of the different jurisdictions lead to identical results, the court nonetheless decides which law to apply for purposes of analytical discussion of the substantive issues. See Shapiro v. Assoc. Int'l Ins. Co., 899 F.2d 1116, 1118 n.2 (11th Cir. 1990).

Because this court's jurisdiction is based in diversity of citizenship, the court is bound to apply the substantive law of the forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); McMahan v. Toto, 256 F.3d 1120, 1131 (11th Cir. 2001). This principle applies to the state's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Shaps v. Provident Life & Accident Ins. Co., 244 F.3d 876, 881 (11th Cir. 2001). Issues such as contract validity, execution, or interpretation are substantive issues for choice of law purposes. In re Estate of Joise Joaquin Nicole Santos v. Nicole-Sauri, 648 So. 2d 277, 280 (Fla. Dist. Ct. App. 1995) (*citing* Scudder v. Union Nat'l Bank, 91 U.S. 406, 411 (1875)); see also In re Ocean Transp. Corp. 213 B.R. 383 (U.S. Bankr. N.D. Fla. 1997).

Florida follows the *lex loci contractus* doctrine, which provides that, in the absence of a contractual forum selection provision, a contract (other than a contract for the performance of services) is governed by the law of the state in which the contract is made. Shaps, 244 F.3d at 881; Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995); Goodman v. Olsen, 305 So. 2d 753, 755 (Fla. 1974); cf. Sturiano v. Brooks, 523 So. 2d 1126 (Fla. 1988) (affirming the applicability of the *lex loci contractus* rule with respect to contracts for automobile insurance).[2]  "[A] contract is made at the place where the last act necessary to complete the contract is done." Shapiro, 899 F.2d at 1119 (quoting Jemco, Inc. v. United Parcel Serv., Inc., 400 So. 2d 499, 500 (Fla. Dist. Ct. App. 1981)); see also Fioretti, 53 F.3d at 1235.

Here, the policy was issued in Michigan and countersigned by an authorized representative of the insurer in Michigan, the premiums were paid in Michigan, and the subject certificates of insurance were issued in Michigan. See (Doc. 1 at 11).  The policy also contains a specific endorsement entitled, "Michigan Changes," which expressly modified the terms of the commercial general liability coverage.  The only fixed location for coverage is Adoreable

---

[2]Describing the *lex loci contractus* doctrine as "archaic" and "antiquated," the Eleventh Circuit has recognized an exception to the doctrine in insurance contract cases where the insured risk is located within the state. Shapiro, 899 F.2d at 1119-20 (following Restatement (Second) of Conflict of Laws § 193 (1971)).  In Shapiro, the policy at issue insured against occurrences at a specific piece of real property, a club in Florida, reasoning that the transient nature of society should not affect contracts for insurance of fixed and immoveable real property.  The court also considered the problem of multiple risk policies, where the insured properties are located in different states, and concluded that the comprehensive policy should be treated as several different policies governed by the laws of the state in which the risk was located.
  This approach holds some appeal here, since Florida has an interest in regulating insurance in the state and the underlying litigations are pending in Florida.  However, since the basis for the Shapiro exception is the fixed location of a piece of real property, it does not apply in the instant case.  On the contrary, the risk covered by the policy at issue is not fixed but instead is at each location for the Toughman Contests, which are conducted at various locations across the country.

Promotions, Inc.'s office in Bay City, Michigan; coverage for the Toughman Contests is identified as "Various Sites." Id. Under these circumstances, the court finds that the *lex loci contractus* doctrine applies, and the laws of Michigan governs the contract provisions and the instant action. See Wackenhut Servs., Inc. v. Nat'l Union Fire Ins. Co., 15 F. Supp. 2d 1314, 1320 (S.D. Fla. 1998) (finding that the *lex loci contractus* doctrine applies to contracts insuring various risks in various states where the place of the risk is not fixed and depends on where the business is currently operating).

B.

Under Michigan law, the policy application, declarations page of the policy, and the policy constitute the contract and are construed together. Royal Prop. Group, LLC v. Prime Ins. Syndicate, Inc., 706 N.W.2d 426, 432 (Mich. App. 2005) (citing Hall v. Equitable Life Assurance Soc. of the U.S., 295 N.W. 204 (1940)). Insurance policies are subject to the same contract construction principles that apply to any other type of contract. Rory v. Continental Ins. Co., 703 N.W.2d 23, 26 (Mich. 2005); City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool, 702 N.W.2d 106, 113 (Mich. 2005). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." Gross Pointe Park, 702 N.W.2d at 113 (quoting McIntosh v. Groomes, 198 N.W. 954 (1924)). In accordance with this rule and to effectuate the principle of freedom of contract, the court must construe clear and unambiguous contract language as written and according to its plain sense and meaning. Gross Pointe Park, 702 N.W.2d at 113 (quoting New Amsterdam Cas. Co. v. Sokolowski, 132 N.W.2d 66 (1965)).

The court shall not create ambiguity where the terms of the contract are clear. Id. The court lacks authority to modify unambiguous contracts or rebalance the contractual equities agreed to by the parties or engage in subjective post hoc judicial determinations of "reasonableness" as a basis to refuse to enforce unambiguous contractual provisions. Rory, 703 N.W.2d at 26. An insurance contract should be read as a whole so as to give effect to every word, clause, and phrase and to avoid rendering any part of the contract surplusage or nugatory. Royal, 706 N.W.2d at 432 (citing Wilkie v. Auto-Owners Ins. Co., 664 N.W.2d 776, 781 n.11 (Mich. 2003); Klapp v. United Ins. Group Agency, Inc., 663 N.W.2d 447, 453 (Mich. 2003)).

A provision in a contract is ambiguous if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning. Royal Prop., 706 N.W.2d at 432. There are two types of ambiguities in written contracts: patent and latent. A patent ambiguity is one that clearly appears on the face of a document, arising from the language itself; resort to extrinsic evidence is unnecessary to detect a patent ambiguity. Grosse Pointe Park, 702 N.W.2d at 113 (citing Black's Law Dictionary (7th ed.). A latent ambiguity does not readily appear in the language of a document but may present itself when the terms of the contract are applied or executed. Id. Extrinsic evidence is admissible to prove the existence of the ambiguity, as well as to aid in the construction of the contract and to resolve any ambiguity proven to exist. Id. (quoting McCarty v. Mercury Metalcraft Co., 127 N.W.2d 340 (1964)). Ambiguous contract language is construed against the insurer and in favor of coverage. Shefman v. Auto-Owners Ins. Co., 687 N.W.2d 300, 303 (Mich. App. 2004) (Heniser v. Frankenmuth Mut. Ins. Co., 534 N.W.2d 502 (1995)).

C.

By their motion for summary judgment, the Adoreable Defendants seek summary judgment in favor of Adoreable, Dore, and the SCAFA and a finding that they are insureds covered by the policy for the legal claims raised against them in the Young/Roten litigations and that no exclusions apply to bar coverage.

The policy in question provided for coverage for bodily injury liability as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Doc. 1 at 20).[3] The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 32.

National Fire denied liability coverage based on an endorsement entitled, "Exlusion – Athletic or Sports Participants" (hereinafter the "exclusion"). See id. at 13. This exclusion states in pertinent part:

> Description of Operations: Toughman Contests
>    . . .
> With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

---

[3]The policy is filed repeatedly in the record. For simplicity's sake, the court will refer to this document filed as an exhibit to Plaintiff's Complaint. See (Doc. 1).

10

Id.  National Fire argues that the language of this exclusion is unambiguous, and the plain language of this provision limits or excepts from coverage any incidents sued upon in the Roten and Young litigations.  In support of this contention, National Fire submits the depositions of John J. Klebba of Special Risks and Richard Smith of Meadowbrook.  (Docs. 53-5 to 53-12).[4]  Mr. Klebba testified that his company could not have offered or provided coverage for athletic participant bodily injury.  See (Doc. 53-6 at 22-23).  By his knowledge, athletic participant bodily injury coverage was not available in the insurance market for sports like boxing and wrestling.  Id. at 23, 43.  Instead, commercial general liability insurance for events such as boxing or wrestling matches typically protects against losses related to slip and fall incidents or fights within the stands.  Id. at 35.

    Mr. Smith testified that his understanding of the general liability coverage sought and obtained by the Adoreable Defendants was for spectator and venue coverage, rather than participant coverage.  See (Doc. 53-8, 53-9 at 26, 29, 35, 42, 60).  As an example, he indicated that the coverage would protect the insureds from liability for a spectator slipping and falling at the venue and then suing them.  See (Doc. 53-8 at 29).  By his understanding, Adoreable did not need coverage against participants or contestants in the Toughman Contests since they were required to sign a waiver of liability in order to participate.  Id. at 36.  As further evidence of the parties' intentions and understanding of the unambiguous language, National Fire further cites to Mr. Smith's testimony that Adoreable's prior commercial general liability insurance policy

---

[4] Non-party Special Risks in an insurance brokerage firm that produced the policy to Adoreable through its agent, Meadowbrook Insurance.  Non-party Meadowbrook is the insurance agency that sold insurance coverage, including the subject policy, to Adoreable for the Toughman Contests.

carried by TIG Insurance Group, Inc., contained an Athletic or Sports Participant Exclusion that employed identical language to the exclusion at issue here.  See (Doc. 53-13 at MEA00636).

The Adoreable Defendants argue that the exclusion is ambiguous because it does not exclude "**claims for**" bodily injury "**brought by**" athletic participants "**against insureds**." (Doc. 42-1 at 18) (emphasis in the original).[5]  In particular, the Adoreable Defendants argue that the exclusion fails to exclude coverage for claims independent of bodily injuries, such as the claims for the insureds' alleged failure to provide adequate medical care to Mr. Roten and Mrs. Young *after* their participation in the Toughman Contests.  The Adoreable Defendants contend that such inartfully drafted verbiage must be construed against the insurer and in favor of them with a finding that the policy fails to exclude the claims raised by the Young and Roten Defendants.

In support, Defendants rely on Colson v. La. State Racing Comm'n, 726 So. 2d 432 (La. Cir. Ct. App. 1999), in which the Plaintiff was injured while riding a horse during a schooling race against the New Orleans Fairgrounds.  The issue concerned insurance coverage for these injuries, where the policy contained an exclusion that stated as follows:

> With respect to any operations shown in the Schedule, this
> insurance does not apply to "bodily injury" to any person while
> practicing for or participating in any sports or athletic contest
> or exhibition that you sponsor.
> FOR THE PURPOSES OF THIS ENDORSEMENT ANY
> PERSON "PARCTICING [sic] FOR OR PARTICIPATING
> IN" SHALL INCLUDE ANY PERSON RIDING OR

---

[5]At oral arguments, the Adoreable Defendants argue that they are not really claiming an ambiguity in the contract but instead are claiming that "the insurance carrier has failed to articulate the exclusion in clear and unambiguous language."  While counsel finds a distinction in the "nuances" between use of ambiguous language and the failure to use clear and unambiguous language, any such distinction is of no analytical import.

12

DRIVING A HORSE FOR THE PURPOSE OF WARM-UP,
EXERCISE, PRACTICE OR RACE.

Id. at 433-34 (emphasis in the original).  The Louisiana appellate court found no error in the trial court's granting of summary judgment to the Fairgrounds, finding that the exclusion clearly excluded Mr. Colson's personal injuries sustained in the accident that occurred during the race but that it did not exclude Mr. Colson's claims for negligent failure to maintain the racetrack and failure to provide adequate medical care following the accident.  Citing to Sam v. Delta Downs, Inc., 564 So. 829 (La. Cir. Ct. App. 1990), the court held that these claims were not clearly excluded because they were "independent" of Mr. Colson's participation in the race.  Colson, 726 So. 2d at 436.

In Sam, the coverage dispute arose in a wrongful death suit brought by the survivors of a jockey who died after the horse he was riding broke its two front legs during a race.  The exclusion there provided that "no insurance is afforded for bodily injury to any person while practicing for or participating in any athletic or sporting event or contest and any medical and surgical relief to any person so injured."  Sam, 564 So. 2d at 831.  The policy defined "bodily injury" to include "damages claimed by any person or organization for the care, loss or services or death resulting at any time from the 'bodily injury'."  Id.  The court held that the claims of improper superversion and selection of medical employees, negligent onsite emergency medical treatment, and maintenance of inadequate on-site medical facilities were claims independent of the deceased's participation in horse racing and therefore were not excluded from coverage.

Upon careful consideration, the court finds that the policy exclusion for "'bodily injury' to any person while practicing for or participating in" a Toughman Contest is unambiguous and clearly excludes coverage for the incidents that are the subject of the Young and Roten

13

litigations. The policy extended coverage for those sums the insured was legally bound to pay as damages because of bodily injuries not otherwise excluded. Bodily injuries to participants in the contests were not covered. The omission of more specific language such as "'claims for' bodily injury 'brought by' athletic participant 'against insureds'" does not render the exclusionary language ambiguous, as urged by the Adoreable Defendants. This is particularly so when viewed in conjunction with the express disclaimer that National Fire "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury.'" I cannot conclude otherwise than that it is clear that the policy was intended by the parties to exclude claims for bodily injury brought by Toughman Contest participants against the insured. To construe the exclusion as narrowly as urged by the Adoreable Defendants would render it meaningless and require a departure from the ordinary and plain meaning of the exclusion, in contravention of the rules of contract construction.

To the extent that the Adoreable Defendants urge the court to adopt the approach taken by the Louisiana courts in Colson and Sam and to find the claims raised in the Young and Roten litigations as "independent claims" beyond the scope of the exclusion, this court declines to do so. While the Complaints in the Young and Roten litigations facially allege fraudulent inducement *before* and negligent failure to provide medical care *after* their participation in the Toughman Contests, the alleged damages arising form these claims are are those same bodily injuries sustained while participating in the Toughman Contests. Although the Adoreable Defendants refer to the claims in the Young and Roten litigations as "independent claims," close scrutiny reveals that these claims are dependent and inseparable from claims for bodily injury within the scope of the exclusion. In other words, but for bodily injuries sustained by Young and Roten

14

while participating in the Toughman Contests, these so-called "independent" claims would not have arisen at all. To hold otherwise would allow claimants to avoid exclusion from insurance coverage through artfully crafted pleadings and thereby undermine the intent and bargain of the parties.

Finally, by their supplemental memorandum (Doc. 59), the Adoreable Defendants argue that the term, "accident," as an undefined term, must be construed liberally as "occurrence" covered by the policy. Specifically, the Adoreable Defendants cite to Section I(1)(b) of the policy, which provides:

> This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
> (3) Prior to the policy period, no insured . . . knew, prior to the policy period, that the "bodily injury" or "property damage" had occurred, in whole or in part.

(Doc. 1 at 20). "Occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1 at 33). By the Adoreable Defendants' argument, because the complaints in the Young and Roten litigations suggest that an "accident" caused bodily injury, those causes are covered by the policy. See (Doc. 59 at 3) (citing Radenbaugh v. Farm Bureau General Ins. Co. of Mich., 610 N.W.2d 272 (Mich. Ct. App. 2000); West Am. Ins. Co. v. Silverman, 378 So. 2d 28, 20 (Fla. Dist. Ct. App. 1979).

This new argument raised by the Adoreable Defendants does not, however, alter the court's analysis of the Athletic or Sports Participants Exclusion and its applicability in this instance. Even if the court were to construe this provision broadly and determine that the bodily

15

injuries were "accidental" and thus "occurrences" that fall within the policy's coverage, such bodily injuries sustained by Young and Roten while participating in the Toughman Contests are nonetheless expressly and unambiguously excluded from coverage.

IV.

Accordingly, it is **ORDERED** that the **Cross-Motion of National Fire & Marine Insurance Company for Summary Judgment** (Doc. 49) is **GRANTED**, and **Adoreable Promotions, Inc., American Boxing & Athletic Assoc., and Arthur P. Dore's Motion for Summary Judgment** (Doc. 42) is **DENIED**.

This matter is hereby scheduled for a status conference before the undersigned on September 6, 2006, at 10:00 a.m., in Courtroom 12B, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida.

**Done and Ordered** in Tampa, Florida, this 18th day of August 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record